[No. 3131–3. Division Three. August 7, 1979.]

ROSS SARGENT, *Appellant,* v. SELAH SCHOOL DISTRICT No. 119, *Respondent.*

*David H. Putney, Mary J. Wynn,* and *Halverson, Applegate & McDonald,* for appellant.

*Rocky L. Jackson,* for respondent.

McINTURFF, J.—Mr. Sargent appeals his discharge as a teacher in the Selah School District.

Mr. Sargent has been a teacher with the Selah School District (the District) for the past 12 years. On April 18, 1978, he received a notice of probable cause for his discharge. This action was precipitated by an incident in which Mr. Sargent tipped or kicked the leg of a student's chair, resulting in the student falling backwards and hitting his head on a table. The student suffered minor injuries. Mr. Sargent took similar action against another student during the same class period, but a desk behind the student's chair prevented the fall. The notice of probable cause for discharge also referred to Mr. Sargent's past record which established previous instances of improper disciplinary techniques and notice by the District to Mr. Sargent of the possible consequences of repeated violations of the District's rules and regulations. Mr. Sargent's continued disregard for school policy demonstrated to the District a lack of necessary self–control and professional judgment, thus justifying his discharge.

Following his discharge, Mr. Sargent requested a hearing to determine if there was sufficient cause for the action taken by the District. The hearing officer entered findings of fact and conclusions of law affirming the discharge. An appeal was then taken to the superior court. On review, the court held the hearing officer's findings were supported by substantial evidence and found the decision neither arbitrary nor capricious nor clearly erroneous.

Initially, we must address the question of the appropriate standard of review in teacher discharge cases. Mr. Sargent contends the trial court erred in reviewing the decision of the hearing officer under the arbitrary or capricious or clearly erroneous standard of review. He contends the court should have conducted an independent, de novo review of the decision of the hearing officer. In addition, Mr. Sargent assigns error to the court's consideration of the hearing officer's findings of fact and conclusions of law, which it found were supported by substantial evidence.

RCW 28A.58.480 sets forth the various standards of review to be employed in teacher discharge cases:

The court may affirm the decision of the board or hearing officer or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the employee may have been prejudiced because the decision was:

. . .

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(6) Arbitrary or capricious.

As originally enacted, this statute contemplated a de novo review in any appeal by a discharged teacher.[1] As amended, however, there are no Washington cases which indicate the particular test to be applied when reviewing the question of sufficient cause for a teacher's discharge. RCW 34.04.130(6)(a)–(f), relating to judicial review of administrative agency decisions, contains language identical to that contained in RCW 28A.58.480; and the cases construing the above statute are therefore applicable by analogy.

 In determining the appropriate scope of review, an appellate court must begin by ascertaining the nature of the ruling it is being asked to review, i.e., is it a question of fact, a question of law, or a mixed question of fact and law? Here, Mr. Sargent disputes the findings of fact entered by the hearing officer as well as the legal determination that sufficient cause was shown for his discharge. Under these circumstances, the decision of the hearing officer is reviewable under the error of law standards set forth in section 4 of RCW 28A.58.480 because the question of sufficient cause for discharge raises a question of mixed law and fact, i.e., there is a dispute both as to the propriety of the inferences drawn by the hearing officer from the raw facts and as to the meaning of the statutory term, sufficient cause. See

---

[1]The former RCW 28A.58.480 (Laws of 1969, 1st Ex. Sess., ch. 223, § 28A.58-.480, p. 1880) stated:

"Any appeal to the superior court by teacher, . . . shall be heard de novo by the superior court."

*Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974).[2]

█ █ Thus, Mr. Sargent's argument is well taken. The court erred in applying the arbitrary or capricious and clearly erroneous standards of review. In this vein, the court also erred in evaluating the hearing officer's findings in terms of the substantial evidence test. However, the fact that the court articulated its decision under a more narrow standard of review does not mean the decision cannot be sustained under the broader error of law standard. Having before us the same evidence considered by the trial court, we will conduct our own de novo review, independent of the decision of the hearing officer, to determine if there was sufficient cause for Mr. Sargent's discharge. *See Ancheta v. Daly*, 77 Wn.2d 255, 260, 461 P.2d 531 (1969).

█ RCW 28A.58.100 requires sufficient cause for the discharge of a teacher.[3] The District has the burden of proving the charges specified in the notice of probable cause to be sufficient cause for discharge by a preponderance of the evidence. RCW 28A.58.450. Sufficient cause has been variously defined as conduct which adversely affects a teacher's efficiency, *Barnes v. Seattle School Dist. 1*, 88 Wn.2d 483, 487, 563 P.2d 199 (1977); *Gaylord v. Tacoma School Dist. 10*, 85 Wn.2d 348, 349, 535 P.2d 804 (1975); *Browne v. Gear*, 21 Wash. 147, 152–53, 57 P. 359 (1899); or conduct which adversely affects performance. *Gaylord v.*

---

[2]*See also Department of Revenue v. Boeing Co.*, 85 Wn.2d 663, 667, 538 P.2d 505 (1975); *Washington State Ferries v. International Organization of Masters, Mates & Pilots*, 20 Wn. App. 887, 890, 584 P.2d 397 (1978); *Chemithon Corp. v. Puget Sound Air Pollution Control Agency*, 19 Wn. App. 689, 694–95, 577 P.2d 606 (1978); *Daily Herald Co. v. Department of Employment Security*, 17 Wn. App. 865, 870, 566 P.2d 929 (1977), *rev'd on other grounds*, 91 Wn.2d 559, 561, 588 P.2d 1157 (1979); *Property Holding & Dev., Inc. v. Department of Employment Security*, 15 Wn. App. 326, 331–32, 549 P.2d 58 (1976).

[3]RCW 28A.58.100:
"Every board of directors, unless otherwise specially provided by law, shall:
"(1) Employ for not more than one year, and for sufficient cause discharge all certificated and noncertificated employees, and fix, alter, allow and order paid their salaries and compensation;"

*Tacoma School Dist. 10,* 88 Wn.2d 286, 290, 559 P.2d 1340 (1977). The basic inquiry is whether the teacher has so materially breached his promise to teach as to excuse the school district in its promise to employ. *Barnes v. Seattle School Dist. 1, supra.*

As mentioned above, the District's decision to discharge Mr. Sargent was precipitated by a classroom incident in which he intentionally tipped or kicked the leg of a student's chair, causing the student to fall backward and hit his head. The student suffered minor, if any, injuries, but was allowed to remain on the floor for approximately 10 minutes, crying. During the same class period, Mr. Sargent intentionally tipped another student's chair in the same manner, but the student did not fall.

Mr. Sargent stands on his record as an excellent teacher and argues the chair–tipping incident does not constitute sufficient cause for his discharge. Furthermore, he contends it was error to consider prior instances in which he employed improper discipline against students. We disagree.

Although there is a general agreement that Mr. Sargent is a good teacher, academically, the record here confirms a pattern of unacceptable disciplinary practices by Mr. Sargent. In 1972, a teacher evaluation report contained a notation by the principal of a reported incident in which Mr. Sargent struck a student with a ruler.[4] In 1973, Mr.

---

[4]Two teacher evaluation reports were made in 1972. The principal reported:

"Mr. Sargent is interested in doing a full day's work without stinting. He doesn't complain about extra assignments. He does not mix easily with adults but he has made an effort to mix more. He likes kids but doesn't like nonsense from them in class. He has few discipline problems. At one time he struck pupils with a ruler but this practice has stopped. He knows his field and likes to teach science. I was especially appreciative of his willingness to take part in our summer workshop."

"Mr. Sargent has more than usual number of critics of his science program this year with seventh graders. . . . Mr. Sargent is sincere, hard working and most kids get used to him and have a liking and a respect for him before the year ends. I have discussed this with Mr. Sargent and together we are trying to figure out what has occurred this year that is different from before. I recommend him for a 1972–73 teaching contract."

Sargent was reprimanded for striking another student with a yardstick and making a humiliating statement to him.[5] Again, in 1975, Mr. Sargent struck a student with a yardstick in disobedience to prior warnings by the District. As a result, Mr. Sargent was placed on probation for the 1975–76 school year.[6] Up until the chair–tipping episode in 1978,

---

[5]At a parent conference two charges were made against Mr. Sargent by a student's parents. Mr. Sargent admitted he swatted the student with the end of a yardstick and made a humiliating statement to the boy. The letter to Mr. Sargent provided, in part:

In the 1972–73 school year a member of the school board questioned me whether Mr. Sargent was still striking students with a ruler. At that time I said I did not think he was since I had advised him not to use a ruler as a striking instrument. Upon investigation, the next day, with Mr. Sargent, I discovered that he had, indeed, used a ruler on a child and I asked him to cease the custom. He assured me he would.

Unfortunately, again, I find that Mr. Sargent has used a ruler to swat a student.

Viewing all the circumstances, it is my judgment that Mr. Sargent should be censured and so noted in his personnel file.

That should a future incident arise where Mr. Sargent strikes a student with an instrument I will recommend him to be placed on Probationary Status."

[6]On May 14, 1975, an incident was reported to the principal in which Mr. Sargent had struck a student with a yardstick on the upper left hip following a disagreement with the student. The personnel file reported:

Later that afternoon I talked to Mr. Sargent concerning the entire situation. He agreed almost entirely with the entire incident and also agreed that he hit Robbe on the fatty part of his hip with the yardstick. We discussed the hitting situation in some length and in some detail and I explained to Mr. Sargent that in his classroom situation, hitting kids with yardsticks, paddles, or anything of that nature was against the building rules and against District regulations. He said he understood this. I asked him if he had had problems with kids and yardsticks in the past and he said, "Yes, you must know about it, it is in my file over at the Superintendent's office". I explained to him that if I were he, I would turn in all of the yardsticks, hide them, get them out of his room completely because I did not want to hear of his hitting any other child in his room with anything. I explained that, the only situation where kids could be paddled would be in my office under my supervision or my designate and a teacher witness when this took place. He understood our discussion clearly and left at that time.

. . .

In addition, the principal made the following recommendation:

Upon investigating the personnel file of Mr. Ross Sargent on May 16, I noticed that he has had incidences of this nature in the past where a yardstick

Mr. Sargent continued teaching without incident; however, in a 1976 teacher evaluation report, the principal noted concern regarding Mr. Sargent's relationship with his students and the school administration.[7] Based on these facts, the District, with the concurrence of the hearing officer and the trial court, could reasonably conclude that Mr. Sargent's teaching efficiency was adversely affected by his continued disregard for school policy and the practice of disciplinary techniques which threatened the physical and mental well–being of his students.

■ Mr. Sargent's argument, which would preclude consideration of prior incidents of improper discipline, is not well taken in light of *Wojt v. Chimacum School Dist. 49*, 9 Wn. App. 857, 863, 516 P.2d 1099 (1973), where the court considered the teacher's *aggregate* conduct as evidencing a pattern of deficiency. A similar argument was rejected in *Potter v. Richland School Dist. 400*, 13 Wn. App. 316, 322, 534 P.2d 577 (1975). A single act of teacher misconduct may not give rise to sufficient cause for discharge. On the other hand, the fact of misconduct does not lose its relevancy with respect to teacher efficiency and performance

---

or ruler has been involved in hitting children. Mr. Manske had submitted a letter of Sept. 26, 1973 to Mr. Sargent's file and I quote, "that should a further incident arise where Mr. Sargent strikes a student with an instrument, I will recommend him to be placed on probationary status."

Since this incident on May 14 occurred, I feel at this time I should recommend to you that Mr. Ross Sargent be placed on probationary status for one school year period and that if any further incident of this type should occur during the year period, I will instigate dismissal proceedings.

[7]The principal made the following comments in connection with Mr. Sargent's teacher evaluation report for the 1976 school year:

Ross Sargent has a strong background of knowledge of his subject areas. He does utilize class time for a solid job of teaching.

My concerns are in the area of relationship with his pupils and his relationship with me. He needs to be more aware of indiv. differences, much more careful in utilizing progress reports, to treat his pupils more fairly. There also needs to be improvement made in his teacher–principal relationship. I am making a specific list of concerns and will work with Ross to correct these concerns.

Ross is capable of being a very strong teacher.

merely because it was not sufficiently flagrant to justify immediate dismissal. Thus, the better rule would permit consideration of prior acts of teacher misconduct extending back for a reasonable length of time. *See* Annot., 4 A.L.R.3d 1090, 1097 (1965). In this way, sufficient cause for discharge may be evaluated in light of the teacher's record as a whole, which may be said to demonstrate a continuing pattern of unacceptable teaching practices.

▇ Next, Mr. Sargent contends his conduct is more properly characterized *as a remediable shortcoming, calling for probation, rather than discharge,* as the appropriate remedy.

Where a teacher is discharged because of classroom deficiencies, the consequences are severe. Chances of other employment in the profession are diminished, if not eliminated. Much time, effort, and money has been expended by the teacher in obtaining the requisite credentials. It would be manifestly unfair to allow a discharge for a teaching or classroom deficiency which is *reasonably correctable.* . . .

. . .

It necessarily follows that conduct, practices, or methods which can fairly be characterized as *remediable teaching deficiencies* fall within the purview of the statute [RCW 28A.67.065[8]], and cannot constitute "sufficient cause" for discharge unless its notice and probationary procedures are complied with.

(Some italics ours.) *Wojt v. Chimacum School Dist. 49, supra* at 862.

---

[8]The former RCW 28A.67.065 (Laws of 1969, 1st Ex. Sess., ch. 34, § 22, p. 588) stated:

"Every board of directors, in accordance with procedure provided in RCW 28A.72.030, shall establish an evaluative criteria and procedures for all certificated employees. Such procedure shall require not less than annual evaluation of all employees. New employees shall be evaluated within the first ninety calendar days of their employment. Every employee whose work is judged unsatisfactory shall be notified in writing of stated areas of deficiencies along with recommendations for improvement by February 1st of each year. A probationary period shall be established from February 1st to April 15th for the employee to demonstrate improvement."

Here, Mr. Sargent has persisted in employing his own brand of discipline, despite repeated warnings from the District. The District gave Mr. Sargent an opportunity to correct this deficiency in 1975–76. While Mr. Sargent successfully completed the probationary period, the District noted continuing concern over his relationship with his students and the school administration. The chair–tipping incident in 1978 is indicative of a recurrent problem that does not appear to be reasonably correctable. More importantly, the disciplinary practices employed by Mr. Sargent have placed the students in a position of potential harm. Under these circumstances, we think the District adequately complied with the mandate of *Wojt v. Chimacum School Dist. 49, supra,* and we find sufficient cause for his discharge.[9]

Judgment of the Superior Court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied August 31, 1979.

Review denied by Supreme Court November 30, 1979.

---

[9]We would caution any reader against interpreting this opinion as holding that this court will not support classroom discipline. We are fully cognizant of the difficulty teachers have with student conduct within the classroom and will generally support disciplinary measures taken within proper guidelines.

The administration of schools is the primary responsibility of the school board—not the courts. The established policy in this District is to handle discipline in the principal's office; this is the policy Mr. Sargent violated.